UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL KANE,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION, and, DOES 1 TO 50,<br><br>                              Defendant. | Case No.: 17cv02581-JAH-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. No. 22]** |

## PROCEDURAL BACKGROUND

Plaintiff, Russell Kane, originally filed a complaint in Superior Court on November 27, 2017, asserting claims for breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress and intentional infliction of emotional distress. Plaintiff names United Services Automobile Association ("USAA") and Does 1 through 50 as defendants. Plaintiff alleges he was severely injured in an automobile accident on August 15, 2013 and opened an Underinsured Motorist ("UIM") claim with Defendant, with whom he had entered into a contract for insurance, and Defendant refused to make an attempt to settle the claim, and fraudulently and maliciously withheld benefits due under the policy. Complaint ¶¶ 11, 16, 25, 48, 51, 56 (Doc. No. 1-2).

Defendant removed the action to federal court on December 28, 2017, and later, filed a motion to dismiss the second cause of action for negligent infliction of emotional distress and third cause of action for intentional infliction of emotional distress. Finding Plaintiff sufficiently alleges severe emotional distress, the Court denied the motion as to the claim for negligent infliction of emotional distress. The Court granted the motion to dismiss the claim for intentional infliction of emotional distress after determining Plaintiff's allegations of intentional conduct were conclusory. Plaintiff was provided an opportunity to amend the claim but did not do so. As such, the third cause of action was dismissed.

On December 10, 2018, Defendant filed a motion for summary judgment, or in the alternative, partial summary judgment. Later, Defendant filed an amended motion for summary judgment. Plaintiff filed an opposition and Defendant filed a reply. The parties appeared before this Court for a hearing on the motion after which the Court took the matter under submission.

## FACTUAL BACKGROUND

On August 15, 2013, Plaintiff was involved in a motor vehicle accident with another driver who was determined to be at fault for the accident. Jones Decl. ¶ 6, 7 (Doc. No. 22-4). Following his settlement with the other driver for his insurance policy limit of $30,000, Plaintiff filed a claim for underinsured motorist bodily injury benefits pursuant to an automobile policy issued by Defendant to Plaintiff. Jones Dec. ¶ 9; Kane Decl. ¶ 6 (Doc. No. 25). Plaintiff sent demand letters dated March 25, 2015 and June 11, 2015 to Defendant seeking the policy limits.[1] Jones Decl. ¶¶ 12, 16; Kane Decl. ¶ 7 (Doc. No. 24).

Plaintiff demanded binding arbitration and received an award of $30,800 minus set off for disability payments on November 11, 2016, which was later reduced by the arbitrator to $25,700.01 on December 22, 2016. Jones Decl. ¶ 18; Levy Decl. ¶ 6 (Doc.

---

[1] The policy limit was $300,000, which was reduced to $270,000 by the payment received from the at-fault driver. Jones Decl. ¶ 9.

No. 22-3)[2]; Laqua Decl. ¶¶ 23, 25 Exhs. 12, 14 (Doc. No. 22-2). Defendant issued payment of $25,700.01 to Plaintiff on January 9, 2017. Laqua Decl. ¶26, Exh. 15.

## LEGAL STANDARD

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Where the party moving for summary judgment does not bear the burden of proof at trial, as here, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." Id. at 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the

---

[2] Plaintiff maintains there are issues of material fact concerning the credibility of Douglas Levy, Defendant's litigation claims handler, that are not appropriate for resolution at the summary judgment stage. He maintains in the original motion Levy purports to have knowledge of what occurred at Plaintiff's deposition and the arbitration but he was not present for either. Plaintiff argues the conflicting declarations raise an issue as to his credibility. In response, Defendant maintains it filed the amended motion for summary judgment to avoid any objections to the competency of Mr. Levy's declaration and replaced the majority of Mr. Levy's declaration with a declaration executed by Mr. Laqua, who does have first-hand knowledge of Plaintiff's deposition and the arbitration proceedings. Defendant argues the instant motion does not materially rely on the amended declaration of Mr. Levy, and, therefore, any purported questions as to his credibility do not create a genuine issue of material fact. Defendant's purported undisputed facts are supported primarily by Mr. Laqua's and Ms. Jones' declarations. Accordingly, Mr. Levy's declarations are not necessary to the Court's determination and any credibility issues raised by Mr. Levy's conflicting declarations are irrelevant to this motion.

non-moving party's claim. <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>United Steelworkers v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1542 (9th Cir. 1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." <u>Lujan</u>, 497 U.S. at 885 (quoting <u>Celotex</u>, 477 U.S. at 323).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. See <u>Schneider v. TRW, Inc.</u>, 938 F.2d 986, 990-91 (9th Cir. 1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. <u>T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Anderson</u>, 477 U.S. at 248).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See <u>Matsushita</u>, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ... ruling on a motion for summary judgment." <u>Anderson</u>, 477 U.S. at 255.

## DISCUSSION

Defendant argues Plaintiff's causes of action for breach of the implied covenant of good faith and fair dealing, and negligent infliction of emotional distress fail as a matter of law. Defendant also argues there is no evidence to support the claim for punitive damages. Plaintiff opposes the motion.

//

//

## I. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant argues Plaintiff is unable to prove that Defendant breached the implied covenant of good faith and fair dealing when handling his claim because Defendant conducted a prompt investigation and made two settlements offers which exceeded the benefits awarded by the arbitrator. Specifically, Defendant maintains it conducted a prompt, reasonable and fair investigation and repeatedly requested additional information from Plaintiff to evaluate his claim but Plaintiff refused or stalled the requests, and when they attempted to subpoena the necessary records Plaintiff refused to produce, Plaintiff objected which further delayed Defendant's attempts to evaluate his claim. Defendant also maintains Plaintiff made a number of misrepresentations regarding the nature and extent of the August 15, 2013 accident and his resulting injuries.[3] Ultimately, Defendant contends it relied upon an expert to opine on the nature and extent of Plaintiff's injuries from the automobile accident. Defendants argue, to the extent that Plaintiff argues its evaluation of his UIM claim was unreasonably delayed, the delays were a result of Plaintiff's own actions and statements, and as such cannot constitute grounds for breach of the implied covenant by Defendant.

Defendant further contends Plaintiff was not damaged by any alleged delay. Defendant maintains Plaintiff rejected its pre-arbitration settlement offers and was later awarded only $25,700.01, far less than both offers. Therefore, Defendant maintains, Plaintiff cannot argue that he was damaged in any way by the timing of its completed evaluation.

---

[3] For example, Defendant contends, the arbitrator's narrative award indicates that Plaintiff testified that the prior his 2006 rollover accident was a minor tumble and that the 2013 accident was much more severe, and the arbitrator noted the statement was contradicted by other evidence including Plaintiff's diary entries used in his litigation of the 2006 accident and his medical records.

5

Defendant also argues there was a genuine and justified dispute between Plaintiff and Defendant as to the amounts owed. Defendant contends, under California law, an insurer is not liable in bad faith for delaying policy benefits if the delay is due to a "genuine dispute" as to the amount of an insured's claim. Defendant argues the disparity between Plaintiff's demands and the arbitrator's award confirms there was a well-founded dispute between the parties.

Citing Maslo v. Ameriprise Auto Home Ins., 221 Cal.App.4th 626 (2014), Plaintiff argues there can be no general dispute as to the amount of the claim without an investigation. He maintains Defendant knew he had been injured as a result of the negligence of an underinsured motorist, and had, itself, determined that the underinsured motorist was solely at fault. He further maintains he made 11 demands, submitted his medical records and billing statements, and Defendant rejected the demands and made ongoing requests for more and more information without an adequate investigation, despite clear evidence of liability and full information. He also maintains Defendant made no offer to settle until the eve of arbitration and only agreed to pay following the arbitration, which was over three years and three months after the accident, and approximately 1.5 years after it had reasonably complete medical records. He contends he was compelled to hire an attorney and incur the costs of arbitration as a result of Defendant's refusal to investigate and evaluate the claim. As such, he argues, regardless of the amount of the award at the arbitration, it is clear that a fact-finder could reach the conclusion that Defendant acted in bad faith based upon the Maslo factors.

He further maintains there is ample evidence for a jury to conclude that Defendant violated the covenant of good faith and fair dealing on multiple additional independent bases in addition to the Maslo factors by: 1) intentionally undervaluing the actual cash value of his automobile; 2) intentionally delaying the medical payments claim; 3) intentionally misrepresenting the applicable statute of limitations; 4) failing in its statutory duty to communicate regarding settlement demands and failing to maintain the claim file; 5) failing to timely produce the Independent Medical Examination ("IME") reports; 6)

telling Plaintiff not to hire an attorney because his claim would be settled shortly; 7) making its first offer on the eve of arbitration in bad faith; and 8) repeatedly intentionally misrepresenting pertinent facts about Plaintiff's claim.

Plaintiff disputes Defendant's contention that any perceived delay in the handling of the claim was the fault of Plaintiff and maintains he puts forth evidence that any delay was in fact caused by Defendant. He maintains Defendant had enough information to set the reserves in the claim file at $70,000 within approximately 10 months of the accident and then at the policy limits of $270,000 approximately 16 months after the accident, but never made any offers to settle until the eve of arbitration, approximately 37 months after the accident. He also disputes Defendant's contention that he caused the delay by refusing to sign medical records or blocking subpoenas. He maintains he agreed to sign a release that was HIPAA compliant but Defendant did not provide such a release until June 2016, and even without the reassurances, he signed a release in October 2015. Additionally, he maintains the evidence demonstrates he did not interfere with any subpoena after September 2015, and he confirmed all subpoenas were completed by February 2016. In any event, he contends, whether he or Defendant caused the delay is a factual dispute, not subject to resolution on summary judgment.

In reply, Defendant argues there are several glaring distinctions between Maslo and the instant case that make it inapplicable to the pending motion for summary judgment, including that Maslo was at the pleading stage, not summary judgment; the insurer acknowledged the insured was owed a significant sum but did not make an offer to settle until after arbitration; and the disparity between the insured's demand and award was not as vast as that in this case.

Defendant also contends Plaintiff attempts to muddy the issues by introducing evidence and arguments related to his claims for property damage, medical payments and disability benefits which were not pled as part of the complaint and were barred by the two-year statute of limitations at the time Plaintiff filed his complaint.

Additionally, Defendant argues many of the allegations by Plaintiff included in the opposition are immaterial and do not support a cause of action for bad faith. Specifically, Defendant argues Plaintiff references various statutory regulations that are immaterial to his bad faith claim. Additionally, Defendant disputes that Plaintiff was advised to not get counsel, and, even if it was true, Plaintiff fails to demonstrate any harm. Similarly, Defendant contends Plaintiff fails to demonstrate harm from the delay in receiving the IME report and maintains the delay was due to Plaintiff's own interference with the investigation because the doctor was unable to complete the report until he received Plaintiff's full subpoenaed medical records. Defendant also disputes Plaintiff was misled regarding the applicable statute of limitations. Defendant maintains it had already determined Plaintiff had adequately demanded arbitration and the plain language of the Defendant's communication to Plaintiff clearly indicated that the statute of limitations was related to Plaintiff's claim for disability wage payments, not his UIM claim. Additionally, Defendant maintains Plaintiff's argument that it did not maintain its file fails because they were in staff counsel's file and Plaintiff, once again, fails to demonstrate any evidence of harm as a result. Defendant also disputes Plaintiff's allegations surrounding its offers to settle and maintains Mr. Laqua provided deposition testimony that the purpose of the two offers was an attempt to settle the case. Regardless, Defendant maintains it did not pursue costs against Plaintiff following the arbitration, and, once again, Plaintiff fails to show any harm.

Defendant also explains the main purpose of a loss reserve is to comply with statutory requirements and to reflect as accurately as possible the potential liability and does not authorize a settlement at that figure. Thus, Defendant argues, Plaintiff's contention that the reserves prove that Defendant had enough information to make a settlement offer fails on its face as the reserves cannot be equated with settlement evaluation or authority.

"[T]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Kransco v. American Empire Surplus Lines Ins. Co., 23 Cal.4th 390,

400 (2000) (quoting <u>Comunale v. Traders & General Ins. Co.</u>, 50 Cal.2d 654, 658 (1958)). An insurer may be liable for breach of the implied covenant if its denial of or delay in paying policy benefits was unreasonable. <u>Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.</u>, 90 Cal.App.4th 335 (2001). Reasonableness is usually a question of fact but "becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." <u>Id</u>. (citing <u>Paulfrey v. Blue Chip Stamps</u>, 150 Cal.App.3d 187, 196 (1983)).

Defendant argues the arbitration award demonstrates there was a genuine dispute as to the amount of its liability which precludes the bad faith claim. If a genuine dispute existed as to the insurer's liability, bad faith liability cannot be imposed. <u>Fraley v. Allstate Ins. Co.</u>, 81 Cal.App.4th 1282, 1292 (2000).

Plaintiff maintains, regardless of the amount of the award, a fact finder could still find bad faith based upon the undisputed facts, and, as such, the case is not appropriately resolved on summary judgment. Plaintiff argues that the delay caused him to incur attorney's fees prior to the arbitration and the offer of settlement.

According to the undisputed facts, Kym Jones, Defendant's claim handler assigned to Plaintiff's potential UIM claim, attests that Plaintiff contacted her on October 30, 2014 and explained he received an offer for the policy limits from the adverse driver's insurance. Jones Decl. ¶ 9. She explained what information she needed to proceed with his claim and sent follow-up correspondence to Plaintiff requesting additional information to evaluate his UIM claim on November 13, 2014, December 15, 2014, February 11, 2015 and March 13, 2015. <u>Id</u>. ¶¶ 9, 10. She further attests Plaintiff did not contact her again to discuss his claim until she contacted him by phone on March 6, 2015. <u>Id</u>. ¶ 10. Plaintiff sent demand letters to Defendant dated March 25, 2015 and June 11, 2015. Kane Decl. ¶ 7; Jones Decl. ¶¶ 12, 16. The March 2015 demand package totaled 516 pages and included Plaintiff's 1099s and paystubs. Jones Decl. ¶ 12, Exh. 2; Haffner Decl. ¶ 30, Exh. 34. On June 8, 2015, Jones sent Plaintiff a letter outlining missing information and additional information needed for his claim, including medical records and bills, a medical authorization that

would allow Defendant to obtain Plaintiff's complete medical records for a period of 5 years prior to the accident to the present to establish is his baseline medical condition prior to the accident, and paystubs for three years pre-accident and that Kane provide the contact information for his manager to verify his wage loss claim. Id. ¶ 14, Exhs. 3, 4. Jones also attests Plaintiff called her on July 8, 2015 regarding the status of his claim and she explained they required additional information but Plaintiff refused to provide the additional documentation and threatened to sue. Id. ¶ 17, Exh. 5. Plaintiff expressed his discomfort with his personal health information potentially being shared with a broad range outside entities identified in Defendant's medical release but agreed to sign a medical release that was HIPAA compliant. Kane Decl. ¶ 46. A medical authorization is not necessary if Plaintiff provides the necessary medical records. Jones Depo. 37:4-7 (Doc. No. 24-2). Plaintiff sent a letter dated July 17, 2015 referencing the telephone call with Ms. Jones on July 8, 2015. Kane Decl., Exh. 6.

The matter was referred to Defendant's litigation department because Plaintiff requested arbitration. Jones. ¶ 18. Scott Laqua, staff counsel assigned to defend against Plaintiff's claim, declares Plaintiff's demand letters which sought the policy limit lacked the information necessary to evaluate his claims, including past medical records to establish a baseline medical condition, all of the medical and billing records for post-accident treatment for which Plaintiff sought payment. Laqua Decl. ¶6. Laqua attests a pre-accident baseline medical condition was imperative to evaluating Plaintiff's claim because Plaintiff was involved in a serious rollover accident in 2006 causing him multiple injuries for which he pursued a UIM claim under his USAA policy from 2006 through July 26, 2011 and Plaintiff claimed that he would have lifelong chronic pain due to neck, shoulder, back and radiating symptomatology into his hands and fingers, and extensive cognitive impairments as a result of the 2006 accident. Id. ¶¶ 7, 8. He further attests Plaintiff blocked his attempts to subpoena the requested records and, thereby, delayed the ability to evaluate his claim. Id. Decl. ¶ 9. Plaintiff sent a demand letter directly to Mr. Laqua dated August 18, 2015 which referenced a "July 20th package" received from Mr. Laqua. Kane Decl., Exh. 6.

Plaintiff provided Defendant four years of tax returns on September 15, 2015. Haffner Decl. ¶ 30, Exh. 34. Plaintiff attests he did not attempt to interfere with Mr. Laqua's subpoenas after September 2015 and on October 26, 2015, he called the subpoena service and confirmed that all subpoenas had been completed except one. Kane Decl. ¶¶ 51, 52.

During the December 1, 2015 deposition, Plaintiff agreed to submit to independent medical examinations ("IME") on shortened notice in order to expedite the ability to evaluate his claim but cancelled each of the IMEs and ultimately agreed to proceed with only the orthopedic IME. Laqua Decl. ¶ 11. On January 6, 2016, Plaintiff was seen by Michael P. Kimball M.D. for an orthopedic Independent Medical Evaluation but Dr. Kimball was unable to complete his report until he reviewed subpoenaed medical records. Laqua Decl. ¶¶ 12. 14. Plaintiff signed a medical records release on April 1, 2016. Kane Decl. ¶ 49, Exh. 39. Defendant received Dr. Kimball's Independent Medical Evaluation on or about May 2, 2016 and received a supplemental report on July 18, 2016 after Dr. Kimball's review of additional medical records. Laqua Decl. ¶¶ 14, 15; Exhs. 6, 7. Plaintiff hired an attorney in May 2016. Kane Decl. ¶ 10.

On September 26, 2016, Defendant made an offer to compromise pursuant to California Civil Procedure section 998 in the amount of $131,481.16 which was comprised of $30,000 for the underlying payment; $50,482.07 of "new money" and $50,999.09 previously paid to Plaintiff. Laqua Decl. ¶ 16, Exhibit 8. Defendant made a second offer to compromise on September 30, 2016, in the amount of $150,999.09 which was compromised of the underlying payment of $30,000; $70,000 of "new money"; and the $50,999.09 previously paid to Kane. Laqua Decl. ¶ 17, Exhibit 9; Haffner Decl. ¶ 8; Exh 7. The claim was submitted to arbitration on October 19, 2016 and the arbitration was completed on October 30, 2016. Laqua Decl. ¶¶ 19, 20. Plaintiff received an award of $30,800 minus set off for disability payments on November 11, 2016, which was later reduced by the arbitrator to $25,700.01 on December 22, 2016. Jones Decl. ¶ 18; Laqua Decl. ¶¶ 23, 25 Exhs. 12, 14. Defendant issued payment of $25,700.01 to Plaintiff on January 9, 2017. Laqua Decl. ¶26, Exh. 15. Mr. Laqua sent a letter to Plaintiff dated

December 20, 2016 in which Mr. Laqua explains "[t]he sole purpose of the statutory offer that USAA made was to preserve their right to pursue costs following the arbitration." Kane Decl. ¶ 34, Exh. 6. However, Laqua testified that the offers were made for the purpose of settling the claim. Laqua Depo. 29:2-23.

While there existed a genuine dispute as to amount of Defendant's liability, there remains a question as to whether the delay in resolving Plaintiff's claim was reasonable. Evaluating Defendant's conduct to determine if the delay was reasonable requires weighing the evidence and credibility issues which are functions of the trier of fact. Accordingly, Defendant is not entitled to summary judgment as to the breach of good faith and fair dealing claim.

## II. Negligent Infliction of Emotional Distress

Defendant argues the claim for negligent infliction of emotional distress ("NIED") fails because causes of actions for negligence are not generally available against insurers and relevant authority supports the position that no NIED cause of action lies against an insurer based on allegations of negligent claim handling. Defendant also argues, under California law, NIED without physical injury is available in limited circumstances that do not exist in this case.

Under California law, "[t]he negligent causing of emotional distress is not an independent tort but the tort of negligence." Marlene F. v. Alliance Psychiatric Medical Clinic, Inc., 48 Cal. 3d 583, 588 (1989) (quoting 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 838, p. 195). Thus, the traditional elements of duty, breach of duty, causation, and damages apply. Id. Defendant reasserts an argument raised in its motion to dismiss, namely that no cause of action for negligent infliction of emotional distress lies against an insurer for negligent claim handling. The Court rejected this argument in the order addressing Defendant's motion to dismiss and relied on the holding of Johnson v. Mutual Benefit Life Ins. Co., 847 F.2d 600 (9th Cir. 1988). In the instant motion, Defendant discusses the holding of Massachusetts Casualty Insurance Company v. Katz, 2012 WL 12886215 (C.D. Cal. 2012), which found Johnson was not persuasive because

the NIED claim in Johnson was not based upon alleged claims mishandling. The court also relied upon the concurring opinion in Benavides v. State Farm Gen. Ins. Co., which determined "[d]elay or failure to pay policy benefits may be actionable as a breach of contract or bad faith, not negligence." 136 Cal.App. 4th 1241, 1253-54 (2006) Defendant contends the Central District of California has definitively held NIED based upon negligent claims handling is not viable and the Northern District of California has similarly declined to extend the tort of NIED to allegations of negligent claim handling. In response, Plaintiff argues Defendant attempts to distinguish Johnson based on the differences in the underlying contract. Plaintiff is mistaken. The significant distinguishable fact is not the type of contract but the allegedly negligent conduct. As noted by the court in Massachusetts Casualty, the plaintiff in Johnson was not seeking damages for NIED for negligent claim handling but the insurer's conduct involving a billing dispute.

Defendant also points to the discussion in Tento Intern. Inc. v. State Farm Fire and Cas. Co., 222 F.3d 660 (9th Cir. 2000), in support of its argument that NIED based upon negligent claim handling is not viable in California. The plaintiff in Tentro appealed the district court's dismissal of its claims against its insured. Upon finding the plaintiff's loss was covered under the policy, the court reversed the district court's dismissal and remanded the action for further pleadings. In its discussion of the remand, the court specifically noted the "unlikely viability" of the plaintiff's claim based upon negligent handling of the insurance claim in light of the fact negligence is not generally available for recovery from insurers in California. 222 F.3d at 664.

The Court finds the sound reasoning of Massachusetts Casualty and the discussion in Tentro persuasive. Because Plaintiff's NIED claim seeks relief for negligent claim handling, it is not viable under California law. As such, Defendant is entitled to judgment on this claim.

**III. Punitive Damages**

Defendant argues Plaintiff has no evidence to support a claim for punitive damages. Defendant contends punitive damages cannot be awarded if the alleged tortuous conduct

was merely the result of mistake of law or fact, honest error in judgment, overzealousness, or negligence, and only conduct that is evil, criminal, recklessly indifferent to the insured's rights, or conduct with a vexatious intent to injure warrants punitive damages. Defendant maintains none of this type of conduct is present in this case, as the undisputed evidence demonstrates that it engaged in a prompt and fair investigation which was delayed only by Plaintiff's own conduct in obstructing the investigation. Defendant further maintains its offers of settlement that were in excess of the ultimate award by the arbitrator shows it evaluated Plaintiff's claim in good faith and without the requisite evidence demonstrating malice, oppression or fraudulent actions to justify an award of punitive damages.

Defendant also argues Plaintiff alleges, without any evidence, that Defendant did not properly investigate his claim and/or pay necessary sums. Additionally, Defendant argues Plaintiff cannot show that there was any damage to him caused by any supposed delay because he rejected the settlement offers.

Plaintiff argues he offers admissible evidence which shows Defendant intentionally engaged in a course of conduct which was designed to abuse Plaintiff's circumstances, including and especially, his financial circumstances to force a settlement more favorable than the facts warranted. He maintains Defendant used its position of power to endlessly request more and more records which were already in its possession as a pretext to refuse to pay, intentionally lied to him regarding the statute of limitations, refused to pay the undisputed damages, told him not to get an attorney, misrepresented pertinent facts, stonewalled him throughout the course of the claim to attempt to obtain a more favorable result, and made its only offer in bad faith on the eve of the arbitration. He argues Defendant's malicious course of conduct which was intended to cause him injury with a willful and conscious disregard for his rights, is despicable conduct which subjected him to cruel and unjust hardship in conscious disregard for his rights, and shows intentional misrepresentations, deceit and concealment of material facts which were intended to deprive him of money due to him, and which caused him to suffer harm.

A plaintiff may recover punitive damages in an action for breach of the implied covenant of good faith and fair dealing if he or she proves, by clear and convincing evidence, the insurer's conduct was oppressive, fraudulent or malicious. Cal.Civ. Code § 3294(a); Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1164 (9th Cir. 2002). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal.Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal.Civ. Code § 3294(c)(2). "'Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal.Civ. Code § 3294(c)(3). When ruling on a motion for summary judgment, the Court must apply the clear and convincing evidence standard. Basich v. Allstate Ins. Co., 87 Cal.App.4th 1112, 1118-21 (2001).

Plaintiff contends Defendant engaged in a course of conduct designed to abuse his circumstances to force a more favorable settlement of his claim. This is supported primarily by Plaintiff's own conclusory allegations as to Defendant's motive. However, Plaintiff also offers the letter from Defendant in which he was incorrectly told there was no definitive statute of limitations for his UIM claim and Plaintiff attests that Mr. Laqua advised him not to get an attorney. See Heffner Decl., Exhs. 15, 16; Kane Decl. ¶ 32. In response, Defendant contends the letter is not relevant because Plaintiff had already demanded arbitration and Defendant denies Mr. Laqua advised Plaintiff against obtaining counsel. These disputes present credibility issues and require the weighing of evidence. Accordingly, Defendant is not entitled to judgment as to the claim for punitive damages.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED Defendant's amended motion

//

//

for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

DATED: September 25, 2019

_____
JOHN A. HOUSTON
United States District Judge